UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TIMOTHY ZUELLY,**

    **Applicant,**

v.                                                   **Case No. 8:17-cv-2970-T-60TGW**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

## ORDER

Timothy Zuelly, proceeding *pro se*, timely applies for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Upon consideration of the application, Respondent's response in opposition (Doc. 10), and Zuelly's reply to the response (Doc. 14), the Court **ORDERS** that the application is **DENIED**:

## Procedural History

Zuelly was convicted after a jury trial of 50 counts of possession of child pornography. (Doc. 13 Ex. 2 at 234-46) The trial court sentenced him to a composite term of 60 years in prison. (*Id.* at 315-19) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 13 Ex. 8 March 30, 2016 opinion)

Zuelly filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Doc. 13 Ex. 9 October 18, 2016 Motion to Correct

1

Illegal Sentence) The state postconviction court denied the motion, and the state appellate court *per curiam* affirmed. (Doc. 13 Ex. 9 October 21, 2016 Order Denying Motion to Correct Illegal Sentence and Doc. 13 Ex. 10)

## **Standard Of Review**

The Antiterrorism and Effective Death Penalty Act governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if an applicant is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the judgment without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002).

### Exhaustion Of State Remedies; Procedural Default

A federal habeas applicant must exhaust his claims by raising them in state court before presenting them in his application. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must

3

give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the applicant fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would now be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

## Discussion

Ground One

Zuelly contends that the trial court erred in admitting *Williams* Rule similar fact evidence,[1] resulting in a violation of his federal right to due process. Zuelly's federal due process claim is unexhausted. On appeal, Zuelly

---

[1] *See Williams v. State*, 110 So.2d 654, 663 (Fla. 1959) (allowing for the admission of similar fact evidence if such evidence "is relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused . . . unless precluded by some specific exception or rule of exclusion.").

challenged the trial court's decision to allow *Williams* Rule evidence. However, he presented the claim solely in terms of state law. (Doc. 13, Ex. 8, Appellant's Initial Brief at 20-32) Zuelly did not identify the claim as federal in nature. (*Id*.) Nor did he cite any federal law, federal constitutional provision, or other federal authority in bringing the claim. (*Id*.)

Because Zuelly failed to alert the state appellate court to a federal claim, he did not satisfy the exhaustion requirement. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim.").

Zuelly cannot return to state court to exhaust his federal due process claim because state procedural rules do not provide for successive direct appeals. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of the sentence). Accordingly, Zuelly's claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Zuelly does not demonstrate that an exception applies to overcome the default. *See id*. Ground One is procedurally barred from federal habeas review.

Ground Two

Zuelly claims that the trial court erred in denying his motion for judgment of acquittal because the State presented insufficient evidence to prove the offenses of possession of child pornography. He contends that the State's evidence was insufficient to prove that the individuals in the images were under 18 years of age, or that he possessed the images during the timeframe alleged in the charging document. Zuelly claims that the trial court's error resulted in a violation of his federal right to due process.

A. Failure To Exhaust A Federal Claim

Zuelly's federal due process claim is unexhausted. On appeal, Zuelly alleged that the state court erred in denying his motion for judgment of acquittal challenging the sufficiency of the State's evidence. Zuelly did not clearly present the federal dimension of the claim. Zuelly cited a federal decision, *In re Winship*, 397 U.S. 358 (1970) for the general proposition that a criminal defendant is protected against conviction except upon proof beyond a reasonable doubt on every element of the crime. (Doc. 13 Ex. 8 Appellant's Initial Brief at 32).

However, Zuelly did not identify his claim as federal in nature, identify any federal constitutional provision, or allege that his federal rights had been violated. Accordingly, he failed to fairly present the federal nature of his claim to the state court. *See McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir.

6

2005) (holding that, as the "purpose underlying the exhaustion requirement [is to] afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary . . . [t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (internal quotation marks and citations omitted).

Indeed, Zuelly's direct appeal claim relied on a distinct standard of review for circumstantial evidence cases that is unique to Florida law. (Doc. 13 Ex. 8 Appellant's Initial Brief at 32-33) Florida's standard provides that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Preston*, 785 F.3d at 460 (quoting *Thorp v. State*, 777 So.2d 385, 389 (Fla. 2000)); *see also State v. Law*, 559 So.2d 187, 189 (Fla. 1989) (stating that in a circumstantial evidence case, the State is required to "introduce competent evidence which is inconsistent with the defendant's theory of events.") (citing *Toole v. State*, 472 So.2d 1174, 1176 (Fla. 1985)). This standard "differs greatly" from the federal standard of review. *Preston*, 785 F.3d at 460.[2] The federal

---

[2] Florida has since eliminated its distinct standard of review in circumstantial evidence cases and now follows the federal standard in all cases. *Bush v. State*, 295 So.3d 179 (Fla. 2020). This subsequent change in the law has no impact on the Court's conclusion that Zuelly failed to exhaust a federal claim in the state appellate court. Zuelly proceeded under the circumstantial evidence standard in effect at the time of his trial and direct appeal.

standard, articulated in *Jackson v. Virginia*, asks whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 319 (1979).

By relying on this distinguishable state law standard for circumstantial evidence cases, Zuelly failed to alert the state appellate court that he intended to bring a federal sufficiency of the evidence claim. *See Preston*, 785 F.3d at 460-62 (holding that an applicant failed to exhaust a federal sufficiency of the evidence claim when his argument in the state appellate court was based on Florida's circumstantial evidence standard). Later in his brief, Zuelly cited several federal decisions. (Doc. 13 Ex. 8 at 33-37) In citing these decisions as persuasive authority in support of his state law claim, however, Zuelly did not address the federal sufficiency of the evidence standard.[3]

Accordingly, Zuelly failed to exhaust the federal dimension of the claim raised in Ground Two. Because Zuelly cannot return to state court to exhaust the federal claim in a second direct appeal, the claim is procedurally defaulted.

---

[3] Some of those decisions applied the federal sufficiency of the evidence standard. However, because the state appellate court would have been required to look beyond Zuelly's brief to discern that these decisions involved the federal standard, Zuelly's citations to them were insufficient to exhaust his federal claim. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that a claim is not fairly presented if the state court "must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim[.]").

*See Smith*, 256 F.3d at 1138. Zuelly has not established that an exception applies to overcome the default. *See id.*[4]

 B. Alternative Review

  1. Introduction

 Alternatively, even assuming that the state appellate court liberally construed Zuelly's direct appeal brief as bringing a federal due process claim challenging the sufficiency of the evidence, he cannot obtain relief. Federal due process requires that every element of a criminal offense be proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 313-14. Thus, as addressed above, a court applying the federal standard evaluates whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found guilt beyond a reasonable doubt. *Id.* at 319.

 On federal habeas review, this standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the

---

[4] Within Ground Two, Zuelly briefly contends that some of the images may have merely shown child nudity, rather than child pornography. (Doc. 1 at 22) Zuelly did not assert in his appellate brief that the images did not constitute pornography. (Doc. 13 Ex. 8 Appellant's Initial Brief) Any federal due process claim challenging the sufficiency of the evidence because the images did not depict "sexual conduct" by a child as defined in § 827.071(1)(h), Fla. Stat., is unexhausted due to Zuelly's failure to raise the claim on direct appeal. Zuelly does not establish that an exception applies to overcome the resulting procedural default. *See Smith*, 256 F.3d at 1138.

9

prosecution and against the defendant. *Id.* at 326. "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

To establish the offense of possession of child pornography, the State had to prove beyond a reasonable doubt that (1) Zuelly "knowingly possessed or intentionally viewed a photograph or image"; (2) the photograph or image "included, in whole or in part, sexual conduct by a child less than 18 years of age"; and (3) Zuelly knew that the photograph or image "included sexual conduct by a child less than 18 years of age." (Doc. 13 Ex. 2 at 220)

### 2. Evidence Of Age

Zuelly's argument that the State failed to prove that the individuals in the images were under the age of 18 years is procedurally defaulted. When Zuelly raised this argument on direct appeal, the State asserted that it was unpreserved because Zuelly did not challenge the evidence of age when he moved for a judgment of acquittal. *See, e.g.*, *Vargas v. State*, 845 So.2d 220, 221 (Fla. 2d DCA 2003) (finding that the question of whether the state presented sufficient evidence of premeditation was not preserved for appellate review

10

because the motion for judgment of acquittal "did not bring to the attention of the trial court the specific ground Mr. Vargas now urges us to consider.").

This Court presumes that the state appellate court's *per curiam* affirmance of the judgment rested on the bar asserted in the State's answer brief. *See Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003) ("[W]hen a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we cannot assume that had the state court explained its reasoning, it would have reached the merits of the claim.") (citing *Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995)) (internal quotation marks and brackets omitted); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of the case."); *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").

The resolution of the claim on state procedural grounds results in a procedural default and the claim is barred from federal habeas review unless Zuelly meets either the cause and prejudice or the fundamental miscarriage of

11

justice exception. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). Zuelly has not demonstrated that either exception applies to overcome the default.

Moreover, even assuming that the state appellate court rejected the federal claim on the merits, Zuelly cannot obtain relief. Zuelly argues that the State was required to prove age by presenting expert testimony about the individuals' physical characteristics. In support, Zuelly cites a Fifth Circuit decision for the proposition that expert testimony may be necessary for this purpose. *See United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999) ("The threshold question—whether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony—must be determined on a case by case basis. . . . However, in this case, in which the government must prove that a model, who is post-puberty but appears quite young, is less than eighteen years old, expert testimony may well be necessary to assist the trier of fact to understand or to determine a fact in issue.") (internal quotation marks and citation omitted).

Zuelly does not identify any controlling authority providing that the State must present expert testimony to prove age. Nor does he establish that the presentation of such evidence was necessary to comply with due process under the circumstances of his case. Zuelly admitted at trial that the images

12

depicted children.[5] In light of this concession, Zuelly fails to demonstrate that no reasonable juror could have found proof of guilt beyond a reasonable doubt as to the element of age. Zuelly has not shown that the state appellate court's rejection of his claim as to evidence of age was contrary to, or unreasonably applied, clearly established federal law or was based on an unreasonable factual finding.

### 3. Evidence Of Possession

Zuelly argues that the State failed to present sufficient evidence that he knowingly possessed the images during the timeframe identified in the charging document. The charging document alleged that Zuelly was in possession of each image of child pornography "on or between the 28th of October, 2013 and the 1st of November, 2013." (Doc. 13, Ex. 1 at 77-91).[6] It is undisputed that on October 27, 2013, the operating system on Zuelly's computer was re-installed. Zuelly contends that, as a result of the re-installation, the images were moved to "unallocated space" where they were

---

[5] Counsel stated in her closing argument:

> So I ask that, although the State showed pictures, talked about children, talked about horrible, horrible acts that were done on these children, which we are not refuting by any means, we are not condoning those photographs and what happened to those children, that is not why we're here, to defend that photograph.

(Doc. 13 Ex. 6 at 487)

[6] Zuelly was arrested on October 29, 2013.

13

inaccessible. Thus, Zuelly contends, he lacked "dominion and control" over the images on or after October 28, 2013.

Detective John McHenry of the Sarasota County Sheriff's Office digital forensics lab conducted a forensic investigation of Zuelly's computer. Detective McHenry testified that when a computer's operating system is re-installed, "everything on the hard drive prior to the new operating system is essentially marked for overwrite and, therefore, goes into unallocated space, free space, and that's where I have to recover it from." (Doc. 13 Ex. 5 at 368)

In other words, unallocated space on a computer's hard drive is where deleted files are stored until they are overwritten or replaced by new information. *United States v. Rivenbark*, 748 F. App'x 948, 952 (11th Cir. 2018).[7] "Unallocated data is not accessible to the user without manipulation or the use of recovery tools on the system, but signifies a file that was present on the computer's allocated space at one time." *Id.* Zuelly cites a Ninth Circuit decision, *United States v. Flyer*, which further explains that "[e]ven if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive. All other attributes—including when the file was created, accessed, or deleted by the user—cannot be recovered." 633 F.3d 911, 918 (9th Cir. 2011). Zuelly contends

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

14

that there was no evidence he had the software needed to access items in unallocated space. *See id.* at 919-20 (reversing a conviction for possession of child pornography under 18 U.S.C. § 2252(a)(4)(B) when the government presented no evidence that the defendant knew of the presence of the images on his computer's unallocated space or could recover or view those images).

Upon a review of the record, the Court concludes that Zuelly has failed to show that no rational juror, after viewing the evidence in the light most favorable to the State, could have found him guilty beyond a reasonable doubt. The State's evidence showed that upon receiving a tip regarding online communication with minors, police traced an IP address to the residence where Zuelly lived with his roommate, Rosemary Carr, and a houseguest. Zuelly had two computers in the home. Zuelly, who later described himself to police as having been "an I.T. guy" for 25 years, built the computer involved in this case. (Doc. 13 Ex. 4 at 160) Neither Carr nor the houseguest at the residence used Zuelly's computer. (*Id.* at 226-30) Carr recalled that Zuelly spent a significant amount of time online and that he had been looking for work. (*Id.* at 227, 247)

Upon investigating the tip, police recovered online chats and search terms of a sexual nature. The trial court permitted the State to introduce *Williams* Rule evidence concerning Zuelly's "engaging in sexually explicit online chats with children by misrepresenting his identity and age during a time period relevant to the alleged Possession of Child Pornography" as

15

relevant to establishing Zuelly's "interest in children for sexual purposes." (Doc. 13 Ex. 2 at 212) The trial court also allowed *Williams* Rule evidence concerning Zuelly's use of search terms "that can be linked to the subject matter of any of the fifty images" of child pornography as relevant to show that he possessed the images. (*Id.*)

Shortly after Zuelly was arrested in connection with the initial investigation on October 29, 2013, he called Carr from jail and asked her to "throw . . . away" or "destroy" a black box on top of his computer. (Doc. 13 Ex. 4 at 163-64) He also stated that, "it's my own fault" but told Carr, "as long as you do that one thing, we'll be okay." (*Id.* at 163-64)[8] Carr placed all of Zuelly's belongings, including his computer, in storage. (*Id.* at 233-34) Carr recalled either unplugging Zuelly's computer or shutting it down and then unplugging it before she moved it into storage. (*Id.* at 236, 246)

Detective McHenry conducted a forensic investigation on the computer in April 2014. Detective McHenry found that the last time the computer was properly shut down was on October 29, 2013. (Doc. 13 Ex. 4 at 309-10, Ex. 5 at 342-43) While some activity registered on November 1, 2013, Detective McHenry did not believe "the computer was . . . necessarily actively being used on November 1st[.]" (Doc. 13 Ex. 4 at 310) He explained that it "could have

---

[8] Carr was not sure what "black box" Zuelly meant. After obtaining a warrant, police seized a hard drive from the residence that was determined to be from Carr's computer. It had no evidentiary value. (Doc. 13 Ex. 4 at 167, 169, 173, 176)

been just an activation of the computer going through the logon screen" and that the computer "could have been immediately unplugged after that point." (Doc. 13 Ex. 5 at 343)

Detective McHenry further explained that, after the operating system was re-installed on October 27, 2013, a program called CC Cleaner, which typically "is used by people to clean up their registry system,"[9] was installed on the computer. (Doc. 13 Ex. 4 at 309, 324, 331, Ex. 5 at 397) As Zuelly notes, Detective McHenry acknowledged that the re-installation of the operating system and the installation of CC Cleaner hindered his ability to find information on the computer. (Doc. 13 Ex. 4 at 330-32) Nevertheless, Detective McHenry recovered some information. He found a copy of Zuelly's resume, which noted Zuelly's proficiency in "data backup, disaster recovery, and transfers." (*Id*. at 317-18) Detective McHenry testified that Zuelly's resume indicated an advanced skill level in working with computers. (*Id*. at 318)

Detective McHenry also found 50 images of child pornography on Zuelly's computer. He explained that the images associated with counts 3 through 11 and counts 34 through 50 were found in a compressed file that he located on unallocated space. (Doc. 13 Ex. 5 at 413-14) Detective McHenry could

---

[9] Detective McHenry described the Windows registry as "the librarian for the computer" that records all activity on the computer. (Doc. 13 Ex. 4 at 323)

17

determine that this file had been on the desktop on October 28, 2013. (*Id.* at 382-86, 414) The file was subsequently deleted. (*Id.* at 382, 385-86)

Detective McHenry testified that the other images were found on unallocated space. (*Id.* at 414) While Detective McHenry was unable to determine the exact times that those images might have been downloaded or last accessed, he believed that the images had been viewed at some point. (*Id.* at 414-17) Detective McHenry also testified that other indicators of the presence of child pornography were file titles and the presence of peer-to-peer file transfer systems. (*Id.* at 345-46)

A rational juror could infer from the State's evidence that Zuelly knew of the nature of the images and knew that the images were on his computer on the desktop or in unallocated space on or after October 28, 2013. Additionally, while Zuelly contends he lacked the software necessary to retrieve items from unallocated space, the statute under which he was charged does not require that images be readily accessible in order for a person to possess them. *See* § 827.071, Fla. Stat. Thus, a rational juror could have found, after viewing the facts in the light most favorable to the State, that the evidence established proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Zuelly does not demonstrate that the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law or was

18

based on an unreasonable factual determination. As a result, he is not entitled to relief on Ground Two.

Accordingly, it is **ORDERED** that Zuelly's application (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Zuelly and to **CLOSE** this case.

It is further **ORDERED** that Zuelly is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Zuelly must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Zuelly has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Zuelly must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of March, 2021.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**